IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **Joseph L. Gearhart** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cause No. 3: 12-CV-012-JTK |
| | § | |
| **Michael J. Astrue, Commissioner,** | § | |
| **Social Security Administration,** | § | |
| | § | |
| Defendant. | § | |

### ORDER AFFIRMING THE COMMISSIONER'S DECISION

Joseph L. Gearhart sought judicial review of the denial of his applications for disability income benefits and supplemental security income.[1] Gearhart alleged he became unable to work at age 39 due to depression and anxiety.[2] Gearhart is a former river-boat deck hand. Although he alleged he was unable to work beginning March 2004,[3] he worked as a deck hand until January 2009. He lost his last job as a deck hand when he was incarcerated for drug possession.

After his release, Gearhart worked as a groundskeeper for a rice and grain facility. He testified that he became depressed and failed to go to work,[4] resulting in

---

[1] *See* docket entry # 2 (complaint).

[2] SSA record at p. 169.

[3] *Id*. at pp. 133, 140 & 169.

[4] *Id*. at p. 37.

termination for absenteeism.[5] Afterward Gearhart was hospitalized after an overdose of psychotropic medication and alcohol. During the hospital admission process, he told a hospital worker that he drank too much and quit his job.[6] After he was discharged, Gearhart applied for disability benefits.

**The Commissioner's decision**. After considering Gearhart's applications, the Commissioner's ALJ determined that although Gearhart had severe mental impairments—depressive disorder, anxiety disorder, mood/bipolar disorder, and history of polysubstance abuse[7]—Gearhart had the residual functional capacity (RFC) to work at all exertional levels with certain non-exertional limitations.[8] After comparing the RFC with the mental demands of a deck hand's job, the ALJ determined Gearhart could do his former work.[9] The ALJ concluded that Gearhart was not disabled under the Social Security Act.[10] After the Appeals Council denied Gearhart's request for

---

[5]*Id*. at p. 732.

[6]*Id*. at p. 583.

[7]*Id*. at p. 12.

[8]*Id*. at p. 14. The ALJ determined Gearhart could: do simple, unskilled or semi-skilled work; understand, follow and remember concrete instructions; work in environments with superficial contact with supervisors, co-workers, and the public; and meet, greet, make change and give simple instruction and directions. *Id*.

[9]*Id*. at p. 19.

[10]*Id*. at p. 20.

review,[11] the ALJ's decision became a final decision for judicial review.[12] Gearhart filed this case to challenge the ALJ's conclusion.

**Mental impairment**. Gearhart maintained the ALJ erred at step three of the disability-determination process by not finding his mental impairment met a listing. In particular, he complained about listings 12.03, 12.04, 12.06, 12.08 and 12.09.[13]

At step three, the ALJ considers the medical severity of the claimant's impairments.[14] If the claimant has an impairment that meets or equals one of the impairments listed in the Commissioner's regulations, the ALJ will find the claimant is disabled.[15] "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[16]

Gearhart did not show he met listing 12.03 (schizophrenia, paranoid and other

---

[11]*Id*. at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 10, pp. 14-16.

[14]20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[15]*Id*.

[16]*Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990).

3

psychotic disorders) because no physician diagnosed him with schizophrenia, paranoia, or some other psychotic disorder, and because the medical evidence did not document the "persistence, either continuous or intermittent, of…1. Delusions or hallucinations; or 2. Catatonic or other grossly disorganized behavior; or 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech…"[17]

Gearhart did not show he met listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), or 12.08 (personality disorders) because he did not show at least two marked limitations, or at least one marked limitation and repeated episodes of decompensation of extended duration.[18]

Gearhart did not show he met listing 12.09 because he did not show he met the requirements for a listing for organic mental disorders, depressive syndrome, anxiety disorders, personality disorders, peripheral neuropathies, liver damage, gastritis, pancreatitis, or seizures.[19]

Instead of showing disability due depression and anxiety, the medical evidence showed Gearhart worked with depression and anxiety with medication compliance,

---

[17] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03.

[18] *See id.* at § 12.04, 12.06 & 12.08.

[19] *See id.* at § 12.09.

avoidance of alcohol, and abstention from illegal substances.[20]  The state examining psychologist opined that Gearhart had the ability to attend and sustain concentration on basic tasks, persist in completing tasks, and complete tasks within an acceptable time frame.[21]  A reasonable mind would accept this evidence as sufficient to support the conclusion that Gearhart was not disabled due to depression and anxiety.  Thus substantial evidence supported the ALJ's decision.[22]

**Impairment of a joint**.  Gearhart also contended the ALJ erred by failing to consider whether his left shoulder met listing 1.02B.[23]  He suggested limitation and pain in his left shoulder prevented him from working.

Listing 1.02B applies to musculoskeletal impairments; in particular, the listing

---

[20]*See id*. at p.306 (on July 27, 2004, reporting good, steady job despite diagnosis of chronic anxiety); p. 392 (on August 7, 2006, reporting return to work on river boat and seeking prescriptions for psychotropic drugs); p. 304 (on Dec. 1, 2006, reporting doing fairly well working on river boat); p. 388 (on Dec. 17, 2008, reporting good compliance with prescribed medications, abstention from marijuana, minimal alcohol consumption, and full time work at rice mill); p. 474 (on Apr. 15, 2009, reporting full-time work and abstention from drugs and alcohol; prescribed medications were working fine).  *But see id*. at p. 414 (on June 6, 2005, reporting bad reaction to Prozac and quitting his river-boat job due to depression).

[21]*Id*. at p. 736.

[22]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[23]Docket entry # 10, pp. 9-13.

applies to the major dysfunction of a joint like a shoulder.[24] The ALJ found no evidence of physical impairment,[25] and thus implicitly determined Gearhart's left shoulder did not meet listing 1.02B.

Gearhart's complaint provides no basis for relief for at least two reasons. First, Gearhart waived the complaint by failing to advance an argument.[26] Second, Gearhart made no showing that he met listing 1.02B.[27] As applied to a shoulder, the listing requires the "inability to perform fine and gross movements effectively."[28] "Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities…"[29] Gearhart never complained about an extreme loss of function of both upper extremities. He complained only about pain in his left shoulder. Impairment of one upper extremity is not enough.

At most, the medical evidence showed: (1) Gearhart injured his left shoulder many years before applying for disability, and (2) the injury was exacerbated from time

---

[24] 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02B.

[25] SSA record at p. 13.

[26] *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show harmful error, the claimant "must provide some indication that the ALJ would have decided differently if the error had not occurred." ).

[27] *Id.*

[28] 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02B.

[29] 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2c.

to time.[30]  No evidence suggested Gearhart's left shoulder interfered with his ability to reach, push, pull, grasp, and finger on a sustained basis.[31]  He reported no problems in performing fine and gross movements for preparing simple meals, feeding himself, taking care of personal hygiene, sorting or handling papers or files, or placing files in a file cabinet at or above waist level.[32]

To the extent Gearhart maintained the ALJ should have ordered a consultative physical examination to ascertain the severity of his shoulder injury, "an ALJ is not required to disprove every possible impairment.  The ALJ is required to order medical examinations and tests only if the medical records presented to him do not provide sufficient medical evidence to determine whether the claimant is disabled.[33]  In this case, the medical records provided sufficient medical evidence to determine whether

---

[30]SSA record at p. 358 (on Feb. 22, 2008, pain upon movement of left shoulder); p. 334 (on Feb. 9, 2009, mild limitation of left shoulder after removing tree limbs with chainsaw); p. 330 (on Apr. 27, 2009, limited movement and tenderness in left shoulder); p. 774 (on Sept. 16, 2009, slightly limited movement in left shoulder); p. 772 (on Mar. 13, 2010, limited movement and tenderness of left shoulder after falling off ladder); p. 769 (on July 8, 2010, limited movement of left shoulder).

[31]*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2c (explaining meaning of "by inability to perform fine and gross movements effectively").

[32]*See* SSA record at pp. 194 & 220 (indicating no problems with lifting, reaching, or using hands).  *See also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2c (providing examples of inability to perform fine and gross movements effectively).

[33]*McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citations omitted).

Gearhart was disabled because Gearhart did not base his alleged disability on physical impairment, and because no medical evidence suggested physical impairment. Moreover, Gearhart worked with left shoulder pain when he worked on river boats.[34] A reasonable mind would accept the evidence as sufficient to support the conclusion that Gearhart was not disabled due to his left shoulder. Thus substantial evidence supported the ALJ's decision.[35]

**Conclusion**. Substantial evidence supported the ALJ's decision denying Gearhart's applications. The ALJ made no harmful legal error. For these reasons, the court DENIES Gearhart's request for relief (docket entry # 2) and AFFIRMS the decision denying the applications.

It is so ordered this 10th day of January, 2013.

_____
United States Magistrate Judge

---

[34]SSA record at p. 321 (on Mar. 12, 2005, reporting pulled muscle in left shoulder while working on river boat and seeking pain medication); p. 304 (on Apr. 21, 2005, reporting slow improvement in left shoulder and plans to work as a carpenter); p. 304 (on Dec. 1, 2006, reporting return to river boat work, although left shoulder was tender and sore); p. 690 (on Jan. 19, 2007, complaining about left shoulder pain and reporting work on tow boat); p. 696 (on Feb. 9, 2009, complaining about left shoulder after using chainsaw to remove broken tree limbs); p. 694 (on Mar. 9, 2009, complaining about left shoulder pain and injury to left elbow incurred while working at rice and grain facility); p. 45 (testifying that he worked with the pulled muscle in his left shoulder).

[35]*See Britton*, 908 F.2d at 330.